IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CATHERINE E. SARACHO,               §
                                    §
                    Plaintiff,      §
                                    §   Civil Action No. 3:10-CV-1472-D
VS.                                 §
                                    §
CHILDREN'S MEDICAL CENTER           §
OF DALLAS,                          §
                                    §
                    Defendant.      §

MEMORANDUM OPINION
AND ORDER

A hospital employee who was terminated after she violated hospital policy by accessing patient medical records and then provided false information when confronted about her conduct sues her former employer for sex and pregnancy discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Defendant moves for summary judgment. For the reasons that follow, the court grants the motion and dismisses this action by judgment filed today.[1]

I

This is an action by plaintiff Catherine E. Saracho ("Saracho") against defendant Children's Medical Center of Dallas ("CMC") alleging claims for sex and pregnancy discrimination and retaliation under Title VII. CMC hired Saracho in 2008 as a Senior

_____

[1]The court is filing this memorandum opinion and order under seal because some of the briefing has been filed under seal. By separate order filed today, the court is directing the parties to advise the court of any grounds for maintaining the memorandum opinion and order under seal.

Patient Access Representative ("SPAR") in the Gastroenterology Clinic ("GE Clinic").[2] As

a SPAR, her job responsibilities included scheduling appointments; ordering medical records

and maintaining charts; and obtaining, analyzing, entering, and distributing accurate patient

demographic and financial information into the hospital billing systems. In connection with

these duties, CMC granted Saracho access to patient medical records so that she could obtain

charts and schedule appointments. As a health care provider, CMC is responsible for

safeguarding the private health and medical information of its patients, and it has adopted

policies regarding access to and use of confidential patient information. Specifically, CMC

Administrative Policy No. 8.19, entitled "Role-based Access to Health Information" ("Access

Policy"), provides:

> It is the policy of [CMC] to make reasonable efforts to limit
> [protected health information ("PHI")] to the Minimum
> Necessary to accomplish an intended purpose . . . . Access to
> PHI is limited to those [CMC] Workforce members . . . on the
> basis of a treatment relationship, patient care function or
> legitimate business need. Once a treatment relationship has
> ended, there is no longer a legitimate need to access the patient's
> PHI . . . . Casual browsing or viewing of PHI is not allowed.

D. App. 81-82. CMC employees, including Saracho, are educated and trained on their

responsibility to ensure privacy and confidentiality of patient medical information.

Each week, a CMC security analyst in the Information Privacy and Security Office

---

[2]In recounting the factual background, the court summarizes the evidence in the light most favorable to Saracho as the summary judgment nonmovant and draws all reasonable inferences in her favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

conducts an audit.  During the audit, the security analyst runs a "Same Last Name Report" to identify any employees who are viewing electronic medical records ("EMRs") for patients with their same last name.  CMC considers this conduct to be an indication of unauthorized access.  In December 2009 Employee 1 ("Emp. 1"), a security analyst, conducted an audit during which Saracho's name appeared on a same last name report.  After reviewing the report and being unable to determine a legitimate reason for Saracho's having viewed a particular patient EMR, Emp. 1 ran a full user report to determine whether there were other instances in which Saracho appeared to have accessed EMRs that were not work-related.  Emp. 1 identified seven patients whose EMRs Saracho had accessed and that Emp. 1 determined Saracho lacked a work-related reason for accessing.  None of these seven patients was ever a patient of the GE Clinic for which Saracho provided scheduling, and four were patients between the ages of 24 and 29 and were therefore ineligible to receive care at CMC.

One of the records that Saracho accessed was the EMR of Patient 1, followed by that of Patient 1's son, Patient 2, even though CMC maintains there was no indication in Patient 1's EMR that she was the mother of Patient 2.  Because there was no information in Patient 1's EMR linking her to Patient 2, and because Saracho viewed Patient 1's EMR first, Emp. 1 concluded that Saracho must have had independent knowledge that Patient 2 was Patient 1's son.  Saracho also accessed the EMR of a Patient 3 who was listed in Saracho's personnel records both as her emergency contact and as a supervisor from her prior employer.

- 3 -

On December 29, 2009  Emp. 1  spoke with Saracho by telephone regarding the EMRs Saracho had accessed.  According to CMC, Saracho denied knowing any of the patients or any person with the names in question and told  Emp. 1  she accessed the EMRs because she had been training new employees and she randomly selected a patient with her same last name to illustrate how to use the EMR system.

On February 5, 2010 Saracho met with   Emp. 1  ,   Employee 2 ("Emp. 2") who was also Saracho's supervisor), an information security manager, and   Employee 3 ("Emp. 3")         [3] (a senior human resources consultant) to discuss the confidentiality breach.  Prior to the meeting, Saracho signed a statement of confidentiality form stating, in part, that she was required to provide "honest and complete information" and that her failure to do so could result in termination of her employment. D. App. 160. According to CMC,  Emp. 1  asked Saracho during the meeting why she had accessed each of the seven EMRs and whether Saracho knew anyone by each patient's name.  For each patient, Saracho responded that she had accessed the EMR for training purposes and that she knew no persons with these names, including Patient 3 .  When Saracho was reminded that someone by the same name  was listed as her emergency contact, she acknowledged knowing a person by that name  but she indicated she had failed to think of him.

Having determined that Saracho lied to  Emp. 1   on December 29 regarding her

---

[3] Emp. 3 , who allegedly recommended the termination of Saracho, was eight months pregnant at the time of the February 5 meeting.

knowledge of any of the patients whose EMRs she had accessed, and had lied again during the February 5 meeting, CMC decided to terminate Saracho's employment.  Specifically, as stated in the termination letter, CMC terminated Saracho's employment for accessing EMRs without authorization and repeatedly denying accessing the EMRs or knowing any of the individuals whose records she accessed.

On March 1, 2010, following her termination from CMC, Saracho filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  In her charge, she alleged that she was discriminated against because of her "sex, female (pregnancy) in violation of Title VII[.]"  D. App. 180.  Saracho did not check the box for "retaliation" in her EEOC charge.  After receiving a right to sue letter, she filed the instant case alleging claims under Title VII for sex and pregnancy discrimination and retaliation. CMC moves for summary judgment.[4]

## II

Because CMC moves for summary judgment on claims as to which Saracho will bear the burden of proof at trial, CMC can meet its summary judgment obligation by pointing the

---

[4]When CMC filed its reply brief, it also submitted a supplemental appendix.  Because CMC did not docket the supplemental appendix as a separate pleading (it docketed it as an attachment to the reply brief), the court was unaware that CMC had filed a reply appendix until it undertook consideration of CMC's motion.  It is well settled that a party who seeks to file a summary judgment reply appendix must first obtain leave of court.  Because CMC did not seek such leave, the court has not considered the supplemental appendix in deciding CMC's summary judgment motion.  *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103-04 (N.D. Tex. 2001) (Fitzwater, J.) (holding that party may not file summary judgment reply appendix without first obtaining leave of court); *see also infra* note 10 (declining to consider CMC's reliance on evidence in supplemental appendix).

court to the absence of evidence to support Saracho's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once CMC does so, Saracho must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Saracho's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Saracho's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Saracho fails to meet this burden. *Little*, 37 F.3d at 1076.

## III

CMC argues as a preliminary matter that Saracho's retaliation claim must be dismissed because she failed to exhaust it before the EEOC. In her summary judgment response, Saracho does not dispute that she failed to exhaust her administrative remedies by including allegations of retaliation in her EEOC charge.

Because Saracho has failed to demonstrate exhaustion of her retaliation claim, the court grants summary judgment dismissing this claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002) ("Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court. Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." (citation omitted)); *Kirkwood v. Inca Metal Prods. Corp.*, 2008 WL 245941, at *5

(N.D. Tex. Jan. 30, 2008) (Fitzwater, C.J.) (holding that plaintiffs did not exhaust retaliation claims where they only checked box marked "race" on charges of discrimination, did not check "retaliation" box, and there was no indication in plaintiffs' EEOC charges, in corresponding charge questionnaires, or any other materials presented to EEOC that showed that plaintiffs exhausted their retaliation claims).[5]

IV

The court next addresses Saracho's sex and pregnancy discrimination claims.[6]

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex[.]" 42 U.S.C. § 2000e–2 (a)(1).  As amended by the first clause of the

---

[5]Some types of retaliation claims do not need to be exhausted.

> [T]he court recognizes that a retaliation claim need not be exhausted where the person complains of retaliation for filing the EEOC charge itself. But because plaintiffs complain of retaliatory acts that preceded the filing of their EEOC charges, they do not fall within this exception.  Where the alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies on that claim.

*Kirkwood*, 2008 WL 245941, at *5 n.11 (citations and quotation marks omitted).  Because Saracho's retaliation claim is based on conduct that occurred before she filed her EEOC charge, she was obligated to exhaust her administrative remedies.

[6]Although Saracho appears to plead separate Title VII claims for sex discrimination and pregnancy discrimination, because the same set of facts is alleged in support of both claims, the court will address them together.

Pregnancy Discrimination Act of 1978, Title VII defines the term "because of sex" as including, but not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

To prevail on her discrimination claim, Saracho must present direct or circumstantial evidence that her sex and/or pregnancy was a motivating factor for the adverse employment action taken by CMC. *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652 (5th Cir. 2004) (addressing Title VII claims for discrimination based on race, ethnicity, national origin, and religion, and retaliation)); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) ("A claim brought under the [Pregnancy Discrimination Act] is analyzed like any other Title VII discrimination claim." (citing *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998))). "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) (age discrimination case)). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. Because Saracho has not adduced direct evidence of sex or pregnancy discrimination, she must rely on circumstantial evidence.

If direct evidence is unavailable, Saracho can prove discrimination using the "modified *McDonnell Douglas* approach[.]" *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305,

312 (5th Cir. 2004) (age discrimination case); *Hagen v. BeautiControl Cosmetics, Inc.*, 1999

WL 451228, at *5 (N.D. Tex. June 28, 1999) (Fitzwater, J.) (applying *McDonnell Douglas*

burden-shifting framework to claim of sex and pregnancy discrimination).  As modified,

*McDonnell Douglas* consists of three stages.  First, Saracho must establish a prima facie case

of discrimination, which "creates a presumption that [CMC] unlawfully discriminated against

[her]."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Second, the burden

shifts to CMC to articulate a legitimate, nondiscriminatory reason for the employment action

taken against Saracho.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993).

The burden on CMC is one of production, not proof, and involves no credibility assessments.

*See, e.g., West*, 330 F.3d at 385.  Third, if CMC meets its production burden, Saracho may

prove intentional discrimination by proceeding under one of two alternatives: the pretext

alternative or the mixed-motives alternative.  *See Rachid*, 376 F.3d at 312.  Under the pretext

alternative, Saracho must "offer sufficient evidence to create a genuine issue of material fact

. . . that [CMC's] reason is not true, but is instead a pretext for discrimination[.]"  *Id.* (internal

quotation marks and citation omitted).  Under the mixed-motives alternative, Saracho must

offer sufficient evidence to create a genuine issue of material fact "that [CMC's] reason,

while true, is only one of the reasons for its conduct, and another motivating factor is

[Saracho's] protected characteristic[.]"  *Id.* (internal quotation marks and citation omitted).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he

ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

against the plaintiff remains at all times with the plaintiff.'"  *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

V

A

To establish a prima facie case of discrimination, Saracho must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, other similarly-situated employees were treated more favorably. *Kretchmer v. Eveden, Inc*., 2009 WL 854719, at *5 (N.D. Tex. Mar. 31, 2009) (Fitzwater, C.J.) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (age and religion discrimination case)), *aff'd*, 374 Fed. Appx. 493 (5th Cir. 2010). CMC appears to concede the first two elements and that Saracho's termination would constitute an adverse employment action under the third element. It maintains, however, that Saracho cannot establish that the alleged conduct of her supervisor in requiring her to seek permission for restroom breaks was an adverse employment action and that Saracho cannot establish a prima facie case of discrimination regarding her termination claim because she cannot establish that she was treated differently than similarly situated coworkers when she was discharged. Saracho does not respond to CMC's argument that the requirement that she seek permission before taking restroom breaks is not an adverse employment action. She does, however, support a prima facie case based on her termination by offering evidence that she was replaced by a male and that other, non-pregnant female employees who accessed medical records in violation of CMC policy were not terminated.

B

The court holds that, to the extent Saracho bases her Title VII claims on the allegation

that she was required to ask permission before taking restroom breaks, but other, non-

pregnant employees were not required to ask permission,[7] she has failed to adduce evidence

of an "adverse employment action" that is sufficient to support a Title VII claim.  First,

Saracho has adduced no evidence, other than an unsupported statement in her affidavit, that

"[n]on-pregnant employees did not have to get permission" to take a restroom break.  P. App.

276.  This self-serving statement is insufficient to raise a fact issue.[8]  *See, e.g.*, *Sanchez v.*

*Dall./Fort Worth Int'l Airport Bd.*, ___ Fed. Appx. ___, 2011 WL 3667435, at *3 (5th Cir.

Aug. 22, 2011) (per curiam) (holding that "a self-serving affidavit, without more evidence,

will not defeat summary judgment." (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 &

n.49 (5th Cir. 2005))).   Moreover, other evidence in the summary judgment record

establishes that all CMC SPARs, including non-pregnant SPARs, were required to seek

permission before taking breaks.  *See* D. App. 189 (reflecting admission by Saracho that "all

Senior Patient Access Representatives and Patient Access Representatives in the [GE Clinic]

were required to let their manager or coworkers know if they needed to leave their work

---

[7]The court cannot discern from Saracho's complaint or her summary judgment response whether she intends to argue that CMC violated Title VII in terminating her employment, requiring her to ask permission before taking breaks, or both.

[8]CMC moves to strike Saracho's affidavit on the ground, *inter alia*, that it is self-serving.  Because the court concludes that Saracho's self-serving statement is insufficient to raise a genuine issue of material fact, and because the court is granting CMC's motion for summary judgment, the court denies the motion to strike as moot.

are[a] so that the telephone could be covered in their absence"). The "PAR Expectations & Code of Conduct," which Saracho signed on July 14, 2008, provides: "I will NOT leave my area unattended. Instead, I will wait for someone to arrive and relieve me before leaving for breakfast, lunch, breaks, errands, etc." and "I will NOT leave my work area for an extended period of time without notifying my manager and fellow colleagues." *Id.* at 165.

Second, even if Saracho could establish that non-pregnant employees were not required to seek permission before taking restroom breaks, such a requirement is not the type of "adverse employment action" to which Title VII typically applies. *See*, *e.g.*, *Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 478, 486 (5th Cir. 2008) (holding that refusal to allow plaintiff to take breaks when requested did not constitute "material[ly] advers[e]" employment action in context of retaliation claim); *Wesley v. Yellow Transp., Inc.*, 2008 WL 5220562, at *2 (N.D. Tex. 2008) (Fitzwater, C.J.) (holding that "receiving unequal break times is not an actionable adverse employment action."). An "adverse employment action," for purposes of a prima facie case, is limited to "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating," and does not include employment actions that do not "affect job duties, compensation, or benefits." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks and citations omitted). Saracho has failed to establish that requiring her to seek permission before taking a restroom break affected her job duties, compensation or benefits, or was anything "more than [a] 'petty slight[ ]' or 'minor annoyance[ ]' that all employees face from time to time." *Aryain*, 534 F.3d at 486 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

68 (2006)).

C

To the extent that Saracho bases her Title VII claim on the termination of her employment, the court holds that she has established a prima facie case under the *McDonnell Douglas* paradigm.

The fourth element of the prima facie case requires Saracho to show either that she was replaced by someone outside the protected class or that other similarly-situated employees were treated more favorably. *See, e.g., Kretchmer*, 2009 WL 854719, at *5. CMC does not dispute that, after Saracho was terminated, she was replaced by a male. Further, Saracho has presented evidence that she reported to her supervisor that a non-pregnant coworker, Employe 4 ("Emp. 4"), had accessed the charts of her children and had accessed the charts of deceased patients to find out their cause of death, but was not terminated. CMC argues that Emp. 4 was not similarly situated because she accessed the records of her children, which did not violate HIPAA,[9] and, at the time, did not violate CMC policies. But CMC has not adduced evidence to refute Saracho's allegation that Emp. 4 also accessed charts of deceased patients, in violation of the Access Policy, yet was not terminated.[10] In light of this evidence and the "minimal" showing required to establish a

_____

[9]The Health Insurance Portability and Accountability Act of 1996.

[10]CMC addresses Saracho's argument regarding Emp. 4 access to deceased patients' records in footnote 31 of its reply brief. *See* D. Reply Br. 9-10 n.31. In doing so, it relies on evidence contained in its supplemental appendix. Because CMC did not obtain leave of court to file the supplemental appendix, the court has not considered this evidence in deciding

- 13 -

prima facie case of discrimination, the court holds that Saracho has met her burden with respect to her allegation that CMC discriminated against Saracho on the basis of sex and pregnancy when it terminated her employment. *See, e.g., Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996) ("'[T]o establish a *prima facie* case, a plaintiff need only make a very minimal showing.'" (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985))).

VI

Because Saracho has established a prima facie case of sex and pregnancy discrimination, the burden shifts to CMC to articulate a legitimate, nondiscriminatory reason for terminating Saracho's employment. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07. The burden on CMC is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385. As its legitimate, nondiscriminatory reason for terminating Saracho's employment, CMC relies on evidence that Saracho improperly accessed protected health information, in violation of the Access Policy, and failed to provide truthful information during the investigation that followed. Because the second step of the *McDonnell Douglas* framework places only a burden of production on CMC, it has met its burden by introducing evidence of a legitimate, nondiscriminatory reason for terminating Saracho. *Id.*

---

CMC's motion.

- 14 -

VII

At the third step of the *McDonnell Douglas* analysis, the burden shifts back to Saracho

to show there is a genuine issue of material fact either that the nondiscriminatory reason

CMC gave for her termination is not true, but is instead a pretext (pretext alternative), or that

the reason, while true, is only one of the reasons for the conduct of CMC, and another

motivating factor was Saracho's sex or pregnancy (mixed-motives alternative). *See, e.g.,*

*Rachid*, 376 F.3d at 312.

A

Saracho explicitly states in her brief that she is relying on the mixed-motives

alternative. *See* P. Br. 9 ("[T]he Mixed Motive Causation Test is Applicable to This Case").

She quotes extensively from the Fifth Circuit's opinion in *Smith v. Xerox Corp.*, 602 F.3d

320 (5th Cir. 2010), in which the Fifth Circuit concluded that direct evidence of retaliation

was unnecessary for a Title VII plaintiff to receive a mixed-motives jury instruction.[11] *See*

*id.* at 332.  In *Smith*, however, the court concluded that a mixed-motives jury instruction was

proper where "the district court had before it substantial evidence of both legitimate and

illegitimate motives for [the plaintiff's] termination."  *Id.* at 334; *see also*, *e.g.*, *Black v. Pan*

---

[11]Saracho appears to contend that, if she relies on circumstantial evidence of discrimination, she is entitled to rely on the mixed-motives analysis under the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  But circumstantial evidence will support a finding of discrimination under both the pretext and mixed-motives alternatives.  Saracho is not entitled to proceed under a mixed-motives alternative unless she adduces "substantial evidence" that her sex or pregnancy was a motivating factor in her termination.  *Smith*, 602 F.3d at 334.

*Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (stating that "[u]nder the mixed-motive alternative, if the plaintiff shows that the plaintiff's protected characteristic was a motivating factor, then the burden shifts to the employer to show that the adverse employment decision would have been made regardless of the characteristic.").  Unlike the plaintiff in *Smith*, Saracho has not presented substantial evidence that CMC based its termination decision on an illegitimate motive (i.e., that Saracho's sex or pregnancy was a motivating factor in her termination).

Saracho's only evidence of a discriminatory intent is her allegation that one non-pregnant employee (Emp.4) viewed EMRs of her children and deceased patients and was not fired, and evidence that, of the eight employees terminated for violating CMC Policy, all were female.  Even viewing the evidence in a light favorable to Saracho as the summary judgment nonmovant, the court concludes that Saracho's evidence does not constitute "substantial evidence supporting a conclusion that both a legitimate and an illegitimate (i.e., more than one) motive may have played a role."  *Smith*, 602 F.3d at 333.  Saracho's allegations regarding Emp. 4 do not support the inference of discriminatory intent because Saracho has adduced no evidence that Emp.4, like Saracho, lied during the investigation of her conduct.  And evidence that the employees terminated for violating the Access Policy at CMC were all female does not, without more, establish sex discrimination.  *See Joseph v. City of Dall.*, 277 Fed. Appx. 436, 442 (5th Cir. 2008) (per curiam) (holding that pretext was not established where plaintiff "has merely provided raw numbers" and "has not shown that these numbers can only be explained by discriminatory animus because he has not purported

to control for factors such as the applicants' ability to pass the physical fitness examination, the applicants' qualifications, or any other potential variable"); *see also Jefferson v. MillerCoors, LLC*, 2010 WL 2670806, at *7 (N.D. Tex. July 2, 2010) (McBryde, J.) ("Raw numbers or statistics such as those presented by plaintiff, devoid of context, are insufficient to prove pretext absent additional evidence of pretext"). This is especially the case where, as here, the CMC security analyst who performed the initial audit was female, Saracho's supervisor was female, and the senior human resources consultant who recommended that Saracho's employment be terminated was both female and pregnant.

## B

Having concluded that Saracho has not adduced sufficient evidence to proceed under the mixed-motives alternative, the court next considers whether Saracho can prevail under the pretext alternative.[12] Under the pretext alternative, Saracho can satisfy her burden by showing "that the legitimate reasons offered by [CMC] were not [the] true reasons, but were a pretext for discrimination." *Reeve*s, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253).

---

[12]Although Saracho appears to contend that this case should be analyzed under the mixed-motives alternative, she argues in response to CMC's motion that the proffered reasons for her termination were not "legitimate." To the extent Saracho is arguing that the reasons CMC gave for her termination are false, such arguments are properly considered under the pretext alternative. *See*, *e.g.*, *Reeves*, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see also St. Mary' s Honor Ctr*., 509 U.S. at 511 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

"The evidence offered to counter the employer's proffered reasons must be substantial."
*Kretchmer*, 2009 WL 854719, at *7 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212,
220 (5th Cir. 2001)).  "In addition, '[t]he plaintiff must put forward evidence rebutting each
of the nondiscriminatory reasons the employer articulates.'" *Id.* (quoting *Wallace*, 271 F.3d
at 220); *see also, e.g., Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (per curiam)
("our precedent is clear that a plaintiff asserting a Title VII claim must rebut each of the
defendant's nondiscriminatory reasons in order to survive summary judgment").

Saracho maintains that she does not know Patient 1 or Patient 2 and adduces
evidence that the EMRs themselves show Patient 2 is the son of " Patient 1 ,"
thus supporting Saracho's speculation that Patient 2 once had the surname Saracho, which
Saracho alleges explains why Patient 2 name came up when Saracho ran a search under her
own last name.  Saracho further argues that, when viewed in chronological order with the
"dwell times" calculated, the evidence shows that she pulled up the charts in question "in
rapid-fire order and viewed [them] for only seconds each," which she alleges confirms her
testimony that she pulled up the charts using her own name and the name of her boyfriend,
Patient 3 , in order to show other employees how to pull up patient charts.  P. Br. 16.

Even assuming that Saracho did not personally know Patient 1 or Patient 2
and that Saracho did pull up the charts in question in order to train other employees,
Saracho's evidence does not establish that the reasons CMC gave for terminating her
employment—that it determined that she had violated the Access Policy and had failed to
provide truthful information in connection with the investigation—were pretextual.

The Access Policy prohibits employees from accessing patients' protected health information unless they do so "on the basis of a treatment relationship, patient care function or legitimate business need." D. App. 82. Saracho does not dispute the allegation that she accessed the health records of seven patients and that this access was not on the basis of a treatment relationship or patient care function. To the extent Saracho is attempting to argue that her access was permitted in conjunction with her alleged training of other employees as a "legitimate business need," CMC has adduced evidence that, during training in 2008, Saracho was informed that "test patients" had been created for testing and training purposes and that she was instructed to use the fictitious medical records instead of actual patient records for training or practice.[13] This evidence would preclude a reasonable jury from finding that Saracho had a "legitimate business need" to access real records in order to train other employees on how to use the electronic medical records system. Based on the evidence, no reasonable jury could find that Saracho did not violate the Access Policy when she viewed the seven records in question. Moreover, Saracho has not adduced any evidence that would enable a reasonable jury to find that her violation of the Access Policy was not the reason CMC terminated her employment.

In addition to its evidence that Saracho violated the Access Policy, CMC has also

---

[13]Although Saracho testified during her deposition that she did not remember hearing about test patients, this evidence would not enable a reasonable jury to reject CMC's evidence that "test patients" did exist such that there would be no "legitimate business need" to access patient files in connection with training new employees. In addition, CMC has adduced evidence that Saracho used "test patients" on several occasions, demonstrating that she was familiar with the process as early as December 2008.

adduced evidence that Saracho failed to give truthful information in connection with CMC's

investigation of Saracho's security breach.  This evidence shows that, when asked during the

December 29 telephone investigation conducted by  Emp. 1   , Saracho claimed not even to

know  someone by name of   CMC has also presented evidence that, during the January 5
        Patient 3

meeting with her supervisor and various others, Saracho again claimed not to know a  person by name

of Patient 3  even though she later admitted that he had been her boyfriend.  Saracho does not

dispute that during both meetings, she lied when she stated she did not know a person by name of

Patient 3   .  Saracho has not introduced any evidence that would permit a reasonable jury to

find that her failure to give truthful answers in the December 29 and January 5 investigatory

meetings was not a true reason for her termination.

Generally, "a plaintiff's prima facie case, combined with sufficient evidence to find

that the employer's asserted justification is false, may permit the trier of fact to conclude that

the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.  Here, however, Saracho

has failed to offer evidence, other than her unsupported belief, that "[t]he reasons given for

[her] discharge are a pretext" that would permit a reasonable finding that CMC proffered

nondiscriminatory reasons for her discharge are pretextual.[14]  P. App. 275.  It is clearly

---

[14]  Employee 5 ("Emp. 5")        statement that, after looking up Saracho's address on
the Internet White Pages, she determined that Saracho's address was 8731 Blo__om Lane
(which the court is partially redacting for privacy reasons in this opinion that will eventually
be publicly-available), the same address as in CMC's medical records for  Patient 1   and
Patient 2        , when there is evidence that Saracho's address was 8737 Blo__om Lane,
does not constitute "substantial evidence of pretext," as Saracho argues. P. Br. 19.  Emp. 5
allegedly incorrect conclusion—after Saracho's termination and after Saracho filed her suit
against CMC—that Saracho and  Patient 1 live at the same address does not demonstrate that

established that a plaintiff's mere subjective belief, without more, is not enough to avoid summary judgment.  *See*, *e.g.*, *Nichols*, 138 F.3d at 570 ("[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief.") (quoting *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991)); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("[A]n employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").  Thus Saracho has not satisfied her burden at the third step of the *McDonnell Douglas* burden shifting paradigm, and the court accordingly grants CMC's motion for summary judgment on this claim.

\*   \*   \*

For the reasons explained, the court grants CMC's motion for summary judgment and dismisses this lawsuit with prejudice by judgment filed today.

**SO ORDERED**.

November 14, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

CMC's proffered reason for Saracho's termination was pretextual.